IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LINDA FAYE NAVARRE,                }
                                   }
    Plaintiff,                     }
                                   }      CIVIL ACTION NO.
v.                                 }      2:11-cv-03056-WMA
                                   }
SYSCO CENTRAL ALABAMA, INC.        }
and WIAL ASSOCIATES, LLC,          }
                                   }
    Defendants.                    }

### MEMORANDUM OPINION

Before the court are separate motions by defendants, Sysco Central Alabama, Inc. ("Sysco") and WIAL Associates, LLC ("WIAL"), for summary judgments seeking dismissal of all claims brought by plaintiff, Linda Faye Navarre ("Navarre"). Navarre instituted her above-entitled action alleging negligent and/or wanton conduct by Sysco and negligent and/or wanton conduct by WIAL that resulted in her injury. Navarre has agreed to dismiss her wanton claim as against WIAL. For the reasons set forth below, Sysco's motion will be denied both as to Navarre's negligence claim and her wantonness claim, while WIAL's motion will be denied as to the negligence claim.

### Facts[1]

Navarre was hired by Pilot Catastrophe Services ("Pilot") on

---

[1] Because of the procedural posture, all admissible evidence is viewed in the light most favorable to Navarre.

1

May 2, 2011 as a claims adjuster to assist Allstate with the influx of claims following the tornado that struck parts of Alabama on April 27, 2011. Pilot was using conference rooms at the Wingate Hotel in Birmingham to receive and train temporary adjusters like Navarre. The Wingate is owned and operated by WIAL. On the morning of May 4, 2011, Navarre reported to the Wingate for training. WIAL had a contract with defendant Sysco under which Sysco made weekly deliveries of items to be used in the hotel kitchen and breakfast bar. On the day in question, two Sysco employees, Eric McReynolds ("McReynolds") and Chris Weaver ("Weaver"), were making Sysco's delivery to the Wingate. Weaver had previously delivered to this location, but McReynolds had not. Navarre claims that Weaver and McReynolds should have made their deliveries through the side door because the lobby was crowded. Testimony supports the assertion that the lobby was crowded but not that, as a matter of law, it was so crowded as to demand a side door delivery. Weaver testified that it was his regular practice to park in front of the hotel and go through the front lobby, and this is what he did on the day in question.

    Around 6:00 A.M., Navarre entered the Wingate through the front lobby, and then went to a conference room on the left side of the hotel. After she checked in with Pilot personnel, they instructed her to go back towards the lobby to another room where she would buy an Allstate shirt. Navarre left the room, walking

very close to the wall on her right side because the lobby and hallway were busy. She was also scanning the area because many people were tracking in mud and dirt. As she was rounding the corner, McReynolds and Weaver were coming towards her from the opposite direction pushing their heavy handtrucks loaded with boxes of supplies.

Navarre testifies that once she entered the lobby area, she felt a force that almost knocked her over and that made her ankle feel like it was hyper-extending. She put out a hand to steady herself, then looked up and saw McReynolds with his head turned around talking to Weaver. When he heard her say "ouch," he pulled the handtruck back towards him, and ran over her ankle a second time. McReynolds then looked at Navarre and said "looks like somebody's had too much to drink this morning." Navarre depo at 103. Navarre responded, "I beg your pardon?" To which McReynolds replied "oh, no, no, no, no, no, I'm talking about me, I had too much to drink." Id. Navarre then proceeded to the lobby while McReynolds and Weaver continued to make their delivery. Navarre managed to take a few steps before she started to feel sharp pain. She then reported the incident to hotel staff and was escorted to the breakfast area where her leg was iced and paramedics were called. She eventually was taken to a hospital.

McReynolds' testimony varies from Navarre's. However, the court must view the facts in the light most favorable to the non-

3

movant. In an attempt to refute Navarre's testimony and to prove that McReynolds was not intoxicated, Sysco submitted the alcohol and drug tests that McReynolds was given and passed.  This is good evidence for a jury to hear. However, as Navarre points out, the tests were not administered immediately. The drug test was given at 11:17 A.M., and the alcohol test was given at 11:25 AM. *See* Exhibit 1 to Doc. 36.

Additionally, WIAL attempts to refute Navarre's account of the incident with the testimony of two independent witnesses, Angel Turner ("Turner") and Elizabeth Dujon ("Dujon"). WIAL interprets their testimony as support for its contention that McReynolds did not hit Navarre at all with his handtruck. However, neither witness testified that McReynolds did not hit Navarre. Dujon said that she did not **see** McReynolds hit Navarre with his handtruck, but she did not see him **miss** Navarre either. Turner, on the other hand, said "he may have bumped her" and that she did hear Navarre say "ouch." Turner depo at 68 and 65. Even if these witnesses had testified that they were absolutely sure that McReynolds's handtruck did not hit Navarre, the court, under Rule 56, would still have to accept Navarre's testimony to the contrary.

McReynolds and Weaver both testified that no one from the hotel gave them instructions regarding how to make their delivery other than telling them to put the goods in the pantries. They made

4

the decisions of how to get the goods to the pantries. Weaver also testified that on the day in question he followed his regular delivery practice of parking in front of the hotel and making the delivery by taking the products through the lobby. Hotel employees testified that they had never known of a similar incident in which someone had been struck by a delivery handtruck, or where a Sysco employee had made a delivery in a hurried or careless manner.

## Analysis

**Sysco's Motion for Summary Judgment**

<u>Negligence Claim</u>

To establish a negligence claim against Sysco, Navarre must prove (1) that Sysco owed a duty to her as a foreseeable plaintiff; (2) that it breached that duty; and (3) that its breach proximately caused her to suffer injury. *Martin v. Arnold*, 643 So. 2d 564. (Ala. 1994). In order to succeed at the summary judgment stage, Sysco must show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Sysco admits a duty of due care to Navarre but denies that it breached that duty.

Sysco argues that Navarre has not provided evidence to prove that its employees acted negligently, and insists that the evidence shows that McReynolds conclusively acted with due care under the circumstances.

[I]t is clear based on testimony taken in this

> case, whether or not the cart actually ran over the plaintiff's foot, it is undisputed that the Sysco employee immediately stopped at the intersection of a corner in a hallway when he first saw the plaintiff, i.e., the plaintiff was walking in one direction and the defendant's employee was approaching from another direction and they met at the intersection. He was not operating his delivery cart in an unreasonable manner and was looking out where he was going. The central issue is not whether he ran over the plaintiff's foot with his cart, but rather whether he acted unreasonably under the circumstances sufficient to show a lack of reasonable care. . . .[T]he plaintiff's negligence claim fails for this very reason.

Doc. 27 at page 11. Navarre, on the other hand, analogizes this situation to cases involving a defendant speeding in an automobile through a crowded parking lot on a foggy night, a defendant speeding in an automobile in a thunderstorm, and other examples of reckless automobile driving. *See e.g. Henderson v. City of Mobile* 611 So. 2d 249 (Ala. 1992) and *Hornady Truck v. Meadows*, 847 So. 2d 908 (Ala. 2002). Pushing a handtruck through a crowded lobby is not quite the same as speeding in a parking lot or a thunderstorm. However, Sysco's claim that it is undisputed that McReynolds acted with due care totally miscomprehends Rule 56.

Navarre contends that McReynolds was intoxicated at the time of the incident. McReynolds's and Navarre's testimonies differ in the description of McReynolds's comments regarding alcohol consumption. However, both testified that McReynolds said that someone had been drinking. McReynolds says that he only said that

6

Case 2:11-cv-03056-WMA   Document 47   Filed 02/21/13   Page 7 of 11

someone had a few too many as a way to lighten the mood, and that he was talking about Navarre rather than himself. However, Navarre says that following McReynolds' first statement, McReynolds clarified that he was not insulting her, but talking about himself. As the non-movant, Navarre must be believed. Sysco offers McReynolds' drug and alcohol tests as evidence that he was not intoxicated. As stated above, this is admissible but not dispositive evidence. These tests were given 5 hours after the incident occurred. If there was alcohol in McReynolds's system at 6 A.M., he still could have passed the test he took after 11 A.M. Viewing the evidence most favorably to plaintiff, there is a disputed question of material fact as to whether McReynolds was intoxicated so as to provide a basis for a finding of negligence. A jury could from this evidence reasonably conclude that he was intoxicated and for that reason did not exercise the reasonable care he might otherwise have exercised. *See Davis v. Radney* 38 So. 2d 867 (Ala. 1949) (holding that intoxication was material in determination of whether defendant acted negligently), *See also Robinson v. Harris*, 370 So. 2d 961 (Ala. 1979) (holding that a jury could properly consider evidence of intoxication in determining negligence). For these reasons, Sysco's motion for summary judgment as to Navarre's negligence claim will be denied.

<u>Wantonness Claim</u>

Navarre also alleges wantonness against Sysco. Wantonness is

defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Code of Alabama § 6-11-20. The Alabama Supreme Court has elaborated on this statutory definition by saying that wantonness is "the conscious doing of some act . . . while knowing of the existing conditions and being conscious that, from doing . . . an act, injury will likely or probably result." *Scott v. Villegas*, 723 So. 2d 642, 643 (1998). This standard does not require Navarre to offer direct evidence of defendant's knowledge or consciousness of risk of harm. The totality of circumstances can provide the basis for a finding of the consciousness of potential injury necessary to prove wantonness. *Id.* Therefore, to survive summary judgment, Navarre need only show that there is a question of material fact regarding the circumstances to provide a reasonable jury a basis for finding that defendant acted wantonly.

As discussed above, there is a dispute of fact regarding whether McReynolds was intoxicated at the time of the incident. Intoxication, of course, can be evidence of wantonness. *See Crovo v. Aetna Cas. & Sur. Co.*, 336 So. 2d 1083 (Ala. 1976) (holding that evidence of intoxicated defendant's wantonness was sufficient to send claim to jury.) Because McReynolds's potential intoxication while making his delivery could be evidence of a conscious disregard for the safety of others, a jury could find that he acted wantonly. Therefore, Sysco's summary judgment as to Navarre's

wantonness claim is due to be denied.

**WIAL's Motion for Summary Judgment**

Navarre has dropped her wantonness claim against WIAL, so all that remains is her negligence claim. Unlike Sysco, WIAL argues that it did not owe any duty whatsoever to Navarre because she was not a foreseeable plaintiff. In this strange argument it fails.

"In Alabama, the existence of a duty is a strictly legal question to be determined by the court." *Proctor v. Fluor Enterprises, Inc.*, 494 F. 3d 1337, 1347 (11th Cir. 2007) *quoting Pritchett v. ICN Med. Alliance, Inc.*, 938 So. 2d 933, 937 (Ala. 2006). A court determines if there is a duty by determining if the harm was foreseeable. "[U]nder Alabama law, in determining foreseeability, 'it is not necessary to anticipate the *specific* event that occurred, but only that some general harm or consequence would follow.'" *Id. quoting Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 910 (Ala. 2004). Therefore, in order for WIAL to have a duty to Navarre, it did not have to be foreseeable that a handtruck would run over the ankle of someone walking through the lobby, but only that harm could reasonably be foreseen to occur from such deliveries being made through a crowded lobby.

Foreseeability can be established by evidence reflecting that the defendant knew or should have known of a likelihood of harm. *Henley v. Pizitz Realty Co.*, 456 So. 2d 272 (Ala. 1984). All of the Wingate employees who were deposed testified that they had never

9

known Sysco to operate in a dangerous manner, nor were they aware of a prior incident where someone in the hotel was struck by a delivery cart. WIAL asserts that this lack of former incidents or dangerous conduct demonstrates absolutely that harm was not foreseeable. Navarre has not offered any evidence of similar incidents at this or other Wingate hotels. She, instead, asserts that it is "undisputed that [the lobby] was too crowded and dangerous." Doc. 33 at 22. The precise number of people in the lobby is unknown, as are the number of square feet in the lobby and the lobby's configuration. The fact that everyone agrees that there were a lot of people in the lobby does not mean that WIAL concedes it to have been dangerous and thus foreseeable that harm would occur. These are classic jury questions.

Navarre correctly argues that knowledge of past acts is not the *sine qua non* for foreseeability. WIAL is a hotel and thus owes a duty of care to all its guests. Although Navarre was not a "guest" in the sense that she herself was seeking lodging, she was an invited visitor to rooms rented by a third party. WIAL presumptively knew of the use to which Pilot was to put the space it rented. It was certainly within WIAL's contemplation that persons would visit the space rented to Pilot and would be entitled to a reasonably safe way to get to and from that space.

WIAL attempts to support its specious argument that it owed no duty to Navarre with an Alabama Supreme Court holding that a night

club did not have a duty to a plaintiff who was beaten up in the parking lot after it had ejected him. However, this case is not helpful. It involved the criminal conduct of a third party. The court there stated: "[t]he concept of foreseeability, especially when relating to the criminal conduct of third parties, does not lend itself to a hard and fast rule; rather, its application depends upon the facts and circumstances of each case." *Ex Parte Wild Wild West Social Club, Inc.*, 806 So. 2d 1235, 1240 (Ala. 2001). Therefore, because of the crucial differences between the instant case and *Wild Wild West*, in which the Alabama Supreme Court said that the duty determination is very fact dependent, the court finds that in the case at hand, the evaluation of the evidence and whether or not it constituted actionable negligence of WIAL is for the jury.

**Conclusion**

For the foregoing reasons, a separate order will be entered denying both Sysco's and WIAL's motions for summary judgment.

DONE this 21st day of February, 2013.

/s/ William M. Acker, Jr.
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE